**John D. FALCON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 98–CV–6411L.

United States District Court, W.D. New York.

March 23, 2000.

Kenneth R. Hiller, Buffalo, NY, for John D. Falcon, plaintiff.

Anne VanGraafeiland, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled under the Social Security Act ("the. Act") and, therefore, is not entitled to disability benefits. As discussed below, the Commissioner's decision is reversed and remanded for further findings consistent with this decision.

## PROCEDURAL BACKGROUND

Plaintiff John Falcon filed an application for Social Security disability insurance on January 28, 1995. (T. 68–71) Plaintiff alleged that he was disabled as of December 29, 1992. (T. 68) His application was denied initially and on reconsideration. (T. 72–74, 87–89) Following plaintiff's request for a hearing, he appeared before an administrative law judge ("ALJ") on February 23, 1996. (T. 31) The ALJ found that Falcon had the residual functional capacity to perform light work and, thus, was not disabled under the Act. This decision became the final decision of the Commissioner on February 9, 1998, when the Appeals Council denied plaintiff's request for review. (T. 8–9)

Plaintiff commenced this action to review the Commissioner's final decision. 42 U.S.C. § 405(g). The Commissioner now moves, and plaintiff cross-moves, for judgment on the pleadings pursuant to FED. R.CIV.P. 12(c). For reasons discussed below, this matter is remanded for further findings consistent with this opinion.

## FACTUAL BACKGROUND

Falcon, 38 years old at the time of the hearing, was initially employed as a sergeant in the Air Force, where he worked in medical administration. (T. 34, 41; 95) Following four years in the Air Force, Falcon was employed by the United Parcel Service ("UPS") from 1981 to 1992. (T. 35, 95) While working for UPS, Falcon injured his back on December 29, 1992. (T. 35, 90) This injury and the resulting complications form the basis of Falcon's disability claim.

Plaintiff has most recently received care from a chiropractor, Dr. Benjamin Caruso. Dr. Caruso diagnosed Falcon's condition as lumbosacral[1] joint disorder and radicular neuralgia,[2] with disc involvement. (T. 161)

Falcon testified that he currently suffers from "intense pain from ... the bottom of my spine to ... about a quarter of the way up." (T. 37) From approximately one quarter to halfway up his spine he has a "tight feeling" in his back, "like [a] muscle pull or spasms." *Id.* Walking short distances causes him some discomfort, and he feels "little twinges" and "stiffness" in his back. (T. 39) Several times a week the pain in his back causes numbness in his left leg. *Id.* Falcon also described an aggravating stiffness in his neck, which sometimes causes pain in his left shoulder. (T. 43) In general, his pain is worse in the cold weather. (T. 60)

Falcon described difficulty sleeping, however, he rises early to help his two children, ages eleven and fourteen, prepare for school. (T. 37) The remainder of his day consists of reading, watching television, or walking a short distance to visit his parents (T. 38–40) Falcon is unable to preform household chores, although he does place dishes in the dishwasher. (T. 40, 51) He stated that he cannot carry more that a quart of milk, however, he can lift and carry 15 to 20 pounds for a minute or two. (T. 42, 56) He is able to drive, and makes short trips to the grocery store with his family. (T. 51) These trips consist of

---

1. Lumbosacral relates to "the lumbar vertebrae and the sacrum." STEDMAN'S MEDICAL DICTIONARY 811 (5th ed.1982).

2. Neuralgia is defined as "pain of a severe, throbbing, or stabbing character in the course or distribution of a nerve." STEDMAN'S MEDICAL DICTIONARY 943 (5th ed.1982). Radicular can refer to "a nerve fiber which joins others to form a nerve." *Id.* at 1186 (see definition of "radicle").

standing and walking for five to fifteen minutes. (T. 55) He also takes his children to their football games, and watches the events from the bleachers or the sidelines. (T. 57)

For the past two years, Falcon has treated his condition by seeing Dr. Caruso once a week for 10 or 15 minutes. (T. 44, 47) Between treatments, Falcon does stretching exercises for five minutes every day. (T. 52–53) Plaintiff also takes over-the-counter pain medications like Tylenol. (T. 45)

### THE ALJ'S DECISION

In order to determine whether a claimant is disabled under the Act, an ALJ employs a five-step sequential evaluation process. *See Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir.1995); *see also* 20 C.F.R. § 404.1520. Consistent with this inquiry, the ALJ first determined that Falcon has not engaged in substantial gainful activity since his alleged onset of disability date. (T. 18) Next, the ALJ determined that plaintiff's impairments, chronic back pain and left leg pain, were sufficiently severe to proceed to the next step of the inquiry. *Id.* The ALJ then determined that plaintiff's impairments did not meet or equal those set forth in the "Listing of Impairments," found in 20 C.F.R. part 404, subpart P, appendix 1. At the fourth step of the evaluation process, the ALJ found that plaintiff did not have the residual functional capacity to perform his past relevant work as a delivery truck driver. (T. 18, 21)

Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). The ALJ found that plaintiff could perform light work and, therefore, rejected his claim for disability benefits.[3]

 The medical record contains assessments of plaintiff's abilities prepared by two separate chiropractors, Dr. Kevin Portney and Dr. Caruso. Dr. Portney, who last examined plaintiff on December 15, 1993, indicated that plaintiff could stand, walk, or sit up to six hours per day. (T. 125, 133) His ability to push or pull was described merely as "limited." (T. 133) He also indicated that plaintiff could lift and carry up to 15 pounds. (T. 133) Dr. Caruso completed several assessments, dated March 9, 1995; August 16, 1995; October 12, 1995; and January 18, 1996. (T. 139–48, 162, 156–57, 190) Each of these evaluations suggested that plaintiff's abilities were substantially limited by his medical condition. For example, Dr. Caruso indicated that plaintiff could sit, stand, or walk for only one-half hour at a time, noting in the margin of the form that plaintiff "must change position frequently." (T. 162) Although somewhat inconsistent with the above-described note, Dr. Caruso also indicated that plaintiff could sit, stand, or walk for one-half hour **total** during the workday. (T. 162)

The ALJ rejected Dr. Caruso's opinion, and found that plaintiff was not disabled because he had "the residual functional capacity to perform light work." (T. 18) He determined that plaintiff could "lift/carry 20 lbs. occasionally and 10 lbs. frequently and stand/walk 6 hours per day." *Id.*

---

**3.** "Light work" is work that:
 involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 20 C.F.R. § 404.1567(b).

Initially, the ALJ discounted Dr. Caruso's residual functional capacity assessment as nonspecific. (T. 18). He later found that the medical evidence in the record contradicted Dr. Caruso's report, taking issue with Dr. Caruso's observation that all the doctors involved with plaintiff's care have recommended surgery. (T. 19) He did not address Dr. Portney's conclusions.

 In evaluating a claimant's application for benefits, an ALJ is not required to "reconcile every conflicting shred of medical testimony." *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981). However, "the ALJ must acknowledge relevant evidence or explain his implicit rejection of it." *Castillo v. Apfel,* 1999 WL 147748, at *8 (S.D.N.Y. Mar 18, 1999). Moreover, if the ALJ finds that a claimant's testimony was not credible, the ALJ's determination must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v. Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988). The responsibility for determining a claimant's residual functional capacity rests with the Commissioner. *See* 20 C.F.R. § 404.1546. However, this determination must be supported by substantial evidence. Although it may be true that plaintiff is in fact capable of performing light work, in reaching his decision the ALJ failed to properly explain the basis for his conclusions.

Although there is authority[4] that a chiropractor is not considered a "treating source," whose opinion may be entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), the opinions of Dr. Caruso must be given at least some consideration, especially since he has been plaintiff's sole provider of medical care for the two years prior to plaintiff's application for disability benefits. *See Lopez v. Chater,* 1998 WL 273017, at * 3 (E.D.N.Y. Jan 15, 1998) (A chiropractor, identified as Dr. Rosen, was not a treating source, although "his lengthy relationship with plaintiff is a variable 'other source' entitled to weight."). Clearly an ALJ may elect to reject evidence from "other sources," as well as from medical sources. However, here the ALJ did not adequately explain his basis for determining plaintiff's physical abilities. The ALJ did focus on plaintiff's activities of daily living, suggesting that they support a finding that plaintiff could perform light work.[5] However, it is unclear whether the ALJ relied on the older assessment prepared by Dr. Portnoy, or whether he relied on the residual functional capacity assessment prepared as part of the Commissioner's evaluation of plaintiff's claim. (T. 79–85) Given the ALJ's rejection of Dr. Caruso's findings, and the absence of other medical evidence in the record, the ALJ should have sought a conclusive determination from a medical consultant.

 The ALJ has an obligation to thoroughly develop the record. Furthermore, the ALJ "must consider all allegations of physical and mental limitations or

---

4. Recently, the Second Circuit suggested in *Balsamo v. Chater* that it is "unclear" whether a chiropractor who possesses a medical degree may be considered a treating source. 142 F.3d 75, 81, n. 1 (2d Cir.1998). However, in *Diaz v. Shalala,* 59 F.3d 307, 313 (2d Cir.1995), the court held that "[b]ecause the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide medical opinions." Both chiropractors who treated Falcon are identified as doctors. However, plaintiff does not argue that either chiropractor should be considered a "treating source" as identified in 20 C.F.R. § 404.1527(d)(2).

5. The ALJ indicated that he "considered claimant's subjective complaints of disabling pain and functional limitations under C.F.R. 404.1529 and Social Security Ruling 95–5P." (T. 19) He found that although plaintiff "does have physical impairments which might reasonably be expected to produce some pain and limitation, they are not disabling within the meaning of the Act." *Id.* The ALJ essentially rejected plaintiff's testimony of severely limiting pain by referencing plaintiff's daily activities and his "minimal and conservative" course of treatment. (T. 19–20) Although this finding is certainly relevant, this finding alone does not convince the Court that the ALJ properly considered plaintiff's abilities.

restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess [residual functional capacity]." SSR 96–8p, 1996 WL 374184, at *5. The regulations require that the ALJ must normally order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved...." 20 C.F.R. § 404.1519a(b)(4). It is considered "reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

In this case, there was a consultative examination performed by Dr. Bharat Gupta on April 18, 1995. Unfortunately, the report is inconclusive. Dr. Gupta gives no opinion other than to suggest he needs to review tests that had already been performed. Dr. Gupta's assessment of Falcon consisted of the following:

> He is a 37 year-old male who has a history of chronic back pain since December 1992 and he has restriction of movements as described in my examination. The patient already had MRI and two CAT Scans and we should get the report of the MRI and CAT scan to see if he has any herniated disk.

(T. 149–50)

With this state of the record, the ALJ had an obligation to further develop the record and clarify the opinion of the consulting physician. This is especially so since the reports from the chiropractors are supportive of Falcon's disability claim.

Given the reports of the chiropractors, and the vague nature of the consulting physician's report, the Court is placed in the unfortunate position of attempting to divine the medical basis for the ALJ's assessment. The ALJ's decision is, therefore, reversed and remanded.

On remand, the ALJ should clearly explain his basis for determining plaintiff's residual functional capacity. Moreover, the ALJ should adequately explain any credibility determinations. Finally, the ALJ found that plaintiff has "not alleged any significant non-exertional limitations," and applied the Medical Vocational Guidelines ("the grids"), which indicated that plaintiff was not disabled. (T. 20) Where a claimant suffers from both exertional and nonexertional impairments, the grids should not be applied "unless there is a rule that directs a conclusion that [the claimant is] disabled based upon [his or her] strength limitations; otherwise the rules provide a framework to guide our decision." 20 C.F.R. § 404.1569a(d). Examples of nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi). If on remand the ALJ again determines that plaintiff has the residual capacity to perform light work, a more detailed conclusion concerning whether plaintiff suffers from any non-exertional impairments is required.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed and remanded for further findings consistent with this opinion. The Commissioner's motion for judgment on the pleadings (Dkt.# 5) and plaintiff's cross motion (Dkt.# 7) are denied.

IT IS SO ORDERED.

PLEASE take notice of the entry of an ORDER filed on 3/23/00, of which the within is a copy, and entered 3/23/00 upon the official docket in this case. (Document No. 9.)