12-1398
*Tankisi v. Commissioner of Social Security*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand thirteen.

PRESENT:

> CHESTER J. STRAUB,
> PETER W. HALL,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SELVI TANKISI,

> > *Plaintiff-Appellant*,

> v.                                            No. 12-1398-cv

COMMISSIONER OF SOCIAL SECURITY,

> > *Defendant-Appellee*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLANT:                         KAREN S. SOUTHWICK, Olinsky Law Group, Syracuse, NY

FOR APPELLEE:                          THOMAS C. GRAY, Special Assistant United States Attorney (Stephen P. Conte, Regional Chief Counsel, Region II, *on the brief*), Joseph J.

Karaszewski, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY

Appeal from a judgment of the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Selvi Tankisi appeals from the district court's judgment entered March 15, 2012. The judgment was based on the district court's March 14, 2012 order granting summary judgment in favor of defendant-appellee Commissioner of Social Security (the "Commissioner"). *Tankisi v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 513, 519 (W.D.N.Y. 2012). We assume the parties' familiarity with the underlying facts and procedural history of the case, as well as the issues presented for review.

On January 9, 2007, Tankisi applied for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, claiming an inability to work since a motor vehicle accident on March 9, 2006. The application was denied initially and, following a hearing before an Administrative Law Judge ("ALJ"), denied again on July 20, 2009. On May 21, 2010, the Appeals Council of the Office of Disability Adjudication and Review denied review of her application. The district court ruled in favor of the Commissioner below, and this appeal followed.

On appeal, Tankisi argues (1) that the interpreter provided at the hearing before the ALJ was ineffective, thus denying her a full and fair hearing; (2) that the ALJ should have ordered a consultative intelligence examination, and that his failure to do so resulted in inadequate

2

development of the record; (3) that the ALJ's determination of her residual functional capacity ("RFC") was not supported by substantial evidence and was legally erroneous; and (4) that the ALJ's assessment of the credibility of Tankisi's testimony was not supported by substantial evidence and was based on factual errors.

We "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). "It is not our function to determine *de novo* whether [a plaintiff] is disabled." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

**1.      Inadequate Interpreter Issues**

Tankisi, whose first and primary language is Turkish, claims that the interpreter provided at her hearing was ineffective, denying her a full and fair hearing. Under the Social Security Administration's Program Operations Manual System ("POMS"), the Administration is to provide a qualified interpreter free of charge to any claimant with limited English proficiency. *See* POMS Section DI 23040.001 (Sep. 27, 2012), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0423040001. A qualified interpreter must "[p]rovide[] an accurate interpretation of questions and responses by both the individual being interviewed and the DDS staff member." *Id.* A violation of the interpreter policy can result in

3

the denial of a full and fair hearing. *See, e.g.*, *Alvarez v. Comm'r of the Soc. Sec. Admin.*, No. 10-890 (JBS), 2011 WL 2600712, at *3 (D.N.J. June 28, 2011); *DiPaolo v. Barnhart*, No. 01-cv-3123, 2002 WL 257676, at *8-10 (E.D.N.Y. Feb. 8, 2002).

Tankisi's claim of inadequate interpretation is unavailing. In *DiPaolo*, a petitioner who "hardly spoke" English was denied an interpreter altogether; the resulting hearing transcript contained numerous non-responsive and incomplete answers. *DiPaolo*, 2002 WL 257676, at *5-6. By contrast, Tankisi was provided with interpretation services via telephone, and the record shows that her answers were generally responsive to the questions put to her. Tankisi understood the English translations, and spoke up when she felt that the translation was inaccurate. Although the hearing was also conducted remotely by video, with the ALJ in one place, Tankisi and her attorney in another, and the interpreter joining via telephone, the ALJ obtained the approval of Tankisi's attorney before proceeding, and stated that if there was a problem with the translation, the hearing could be rescheduled. Tankisi suggests that it was "unreasonable to expect" her attorney to recognize when she "failed to fully understand" the proceedings. Appellant's Br. at 21-22. However, Tankisi's attorney, who was present and questioned Tankisi in person, would have been able to recognize if Tankisi did not understand the proceedings. Tankisi's attorney did not object to the arrangement at any time.

Moreover, Tankisi has failed to explain how she was disadvantaged by any interpretation issues. *See Alvarez*, 2011 WL 2600712, at *4; *cf. Boa Jun Liu v. Holder*, 478 F. App'x 692, 695 (2d Cir. 2012) (summary order) (no due process violation and no prejudice in immigration hearing where "alleged mistranslations did not result in any significant loss of meaning"); *Zaien Chen v. Mukasey*, 271 F. App'x 104, 105-06 (2d Cir. 2008) (summary order) (no due process

4

violation where petitioner failed to identify a mistranslation touching on a dispositive issue at immigration hearing). Although Tankisi asserts that difficulties with the translation prevented her from fully stating her position, she has not identified a specific point that she was unable to present or understand at the hearing. Indeed, at the close of the hearing, the ALJ gave Tankisi's counsel an opportunity to ask further questions, and thus ensure that the entirety of Tankisi's position was on the record. As a result, the arrangement with the interpreter and his services did not result in a denial of a full and fair hearing.

**2. Comprehensive Intelligence Examination**

Tankisi also argues that the ALJ failed to develop the record adequately by failing to order a consultative intelligence examination. A consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision. *See Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000). However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it. *Lefever v. Astrue*, 5:07-cv-622 (NAM/DEP), 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 F. App'x 608 (2d Cir. 2011); *see also Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998) (ALJ did not neglect duty to develop record by failing to order consultative psychological examination where the only evidence suggesting an issue was doctor's statement to plaintiff that the problems were "in her head").

Tankisi suggests that intelligence testing was warranted because Dr. Zax, a state agency consultative examiner, indicated that Tankisi's attention, concentration, and memory were

5

impaired.  Dr. Zax also stated that "[i]ntellectually, she is borderline to deficient," and that "she is probably somewhat limited intellectually."  Tankisi argues that a proper assessment of her cognitive abilities might have resulted in a different RFC finding, and might have qualified her as disabled under Listing 12.05(C).

The record does not support Tankisi's argument.  Although Dr. Zax stated, "I think [Tankisi] is probably somewhat limited intellectually," he went on to state that "for the most part the problems that her husband described are connected with her general life situation and her lack of finances and general unhappiness in dealing with her children.  My feeling is the examination results are probably not consistent with her allegations."  An examination of Tankisi on January 12, 2007 showed "no evidence of neurologic or motor deficit," and Tankisi herself testified that she could handle such tasks as balancing a checkbook.  Given the voluminous record in this case, the ALJ was not obligated to order a consultative intelligence examination to supplement the record in response to a few stray remarks unsupported by other record evidence and not alleged by Tankisi as a potential disability.

Although Tankisi suggests that her cognitive disability might have made it more difficult for her to recognize and assert her cognitive disability as a basis for relief, at least one claim form, dated February 13, 2007, appears to have been completed by her husband.  Moreover, to the extent that the record supported a finding that Tankisi faced cognitive limitations, those limitations were incorporated into the assessment of Tankisi's RFC: the ALJ found that Tankisi could not "perform[] work that . . . require[d] complex or detailed instructions."  The record does not suggest any further limitation that would necessitate a consultative intelligence examination.

**3.      Residual Functional Capacity**

Tankisi asserts that the ALJ's RFC finding was not supported by substantial evidence and was legally erroneous. The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). Although the RFC is assessed using "all the relevant evidence in [the] case record," *id.*, the medical opinion of a treating physician is given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if the treating physician's opinion is contradicted by other substantial evidence, and so is not controlling, it may still be entitled to significant weight "because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988).

**A.      Medical Source Statement**

Tankisi first asserts that the ALJ committed error in assessing her RFC by failing to seek an opinion from her treating physicians as to whether Tankisi could meet the physical demands of work. Social Security Administration rules provide that "[m]edical reports should include . . . [a] statement about what you [i.e., the Claimant] can still do despite your impairment(s) . . . . Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete." 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). The record does not indicate that the ALJ made the requests addressed by this provision.[1]

---

[1] The Commissioner observes that Tankisi had an attorney during the hearing process, and that he submitted evidence from medical sources (but not opinion evidence) on her behalf. Although this may explain the absence of

Citing case law from district courts in this circuit, Tankisi suggests that this absence is fatal. *See, e.g.*, *Funk v. Astrue*, No. 1:10-cv-602 (MAD), 2012 WL 501017, at \*4-5 (N.D.N.Y. Feb. 15, 2012); *Peed v. Sullivan*, 778 F. Supp. 1241, 1245-46 (E.D.N.Y. 1991). Indeed, the plain text of the regulation does not appear to be conditional or hortatory: it states that the Commissioner "*will* request a medical source statement" containing an opinion regarding the claimant's residual capacity. 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions.

However, the text indicates that "[m]edical reports *should* include . . . [a] statement about what you can still do despite your impairment," not that they *must* include such statements. *Id.* (emphasis added). It also indicates that "the lack of the medical source statement will not make the report incomplete." *Id.* Other regulations also state that a case record "*may* contain medical opinions." *See, e.g.*, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added). These provisions indicate that the ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused. Taken more broadly, they suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity. *See Moser v. Barnhart*, 89 F. App'x 347, 348 (3d Cir. 2004); *Scherschel v. Barnhart*, 72 F. App'x 628, 630 (9th Cir. 2003); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

---

a request, it cannot excuse it. We have cautioned that Social Security adjudications are not traditional adversarial proceedings. Unlike a judge at trial, the ALJ has a duty to "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec*, 651 F.3d 299, 305 (2d Cir. 2011) (internal quotation marks and citations omitted). Naturally, counsel has a responsibility to bring all favorable evidence to the ALJ's attention. *Id.* But counsel's responsibilities do not derogate from the ALJ's responsibility to investigate. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

The medical record in this case is quite extensive. Indeed, although it does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician, Dr. Gerwig. Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity. *Cf. Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

### B. Substantiality of the Evidence

Tankisi additionally claims that the ALJ's RFC finding was not supported by substantial evidence. In particular, she asserts that the ALJ erred in placing "great weight" on the opinions of consulting physicians, Dr. Toor and Dr. Zax, and "substantial weight" on the findings of a state disability examiner.

As described above, the opinions of consulting physicians, such as Dr. Toor and Dr. Zax, generally have less value than the opinions of treating physicians. However, as Tankisi notes, the general rule is driven by the observation that "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Appellant's Br. at 32 (quoting *Anderson v. Astrue*, No. 07-civ-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (internal quotation marks omitted)). Here, Dr. Toor examined Tankisi twice—on both July 14, 2006, and March 26, 2007. Both examinations included a history of the patient and a full physical examination. Although Tankisi challenges Dr. Toor's opinions as "incomplete and vague," Appellant's Br. at

9

32, the opinions, coupled with the other medical evidence, were sufficient to support the inference drawn. Dr. Toor did not simply describe Tankisi's condition as "mild to moderate," *id.*; he provided additional clarifying information: "[m]ild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting. Her headache may interfere with her daily routine."

Tankisi's challenge to the weight given Dr. Zax's conclusions does not square with her claim (discussed above) that the ALJ was obligated to order a consultative intelligence examination on the basis of Dr. Zax's remarks. In any event, Dr. Zax's conclusions were supported by numerous medical record reports and the conclusions of a state agency consultant. Finally, the ALJ did not credit the consulting physicians to the exclusion of Tankisi's treating physicians.

Tankisi also challenges the ALJ's decision to give "substantial weight" to the findings of a state disability examiner, Susan Peterson. Tankisi notes that the record does not indicate that Peterson had any medical credentials, and suggests that Peterson's findings were irrelevant because they were based on an examination conducted in 2007. It is indeed an error to treat "a disability analyst as a doctor." *Castano v. Astrue*, 650 F. Supp. 2d 270, 281 (E.D.N.Y. 2009). However, the medical assertions in Peterson's report were supported by the remainder of the record. For example, a hospital triage report in 2008 indicated that, although Tankisi self-reported pain at a level of "10/10," she was in "no apparent distress." Peterson's assessment of Tankisi's abilities also appears to be consistent with the opinions of Dr. Toor and Dr. Gerwig, a treating physician. And although Peterson made her findings in 2007, the record does not unequivocally suggest later deterioration. Dr. Capicotto's review of an MRI in 2009 stated that

10

Tankisi's lower back pain "may have progressed *to a degree*", and examinations in January and April of 2009 revealed a full range of motion.

The burden is with Tankisi to show that she lacks the functional capacity to perform in her past employment position. *See Petrie v. Astrue*, 412 F. App'x 401, 404 (2d Cir. 2011) (summary order). In light of the foregoing, we conclude that the ALJ's decision on this point was supported by substantial evidence.

Tankisi also objects to the ALJ's use of testimony by Miriam Green, a vocational expert. At the hearing, the ALJ posed a series of hypothetical questions to Green, asking whether a person with certain impairments would be able to function in various jobs in the national economy. Tankisi correctly notes that there must be substantial evidence to support the hypotheticals put to the vocational expert. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983). However, given our conclusion above that the ALJ's RFC finding was supported by substantial evidence, we see no error in the ALJ's questioning or in his use of the resulting testimony.

**4. Credibility Assessment**

Finally, Tankisi claims that the ALJ erred in his conclusion that she was not credible in discussing her pain. Generally, it is the function of the ALJ, not the reviewing court, to appraise the credibility of witnesses. *Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). There is support in the medical record for the ALJ's conclusions. For example, several medical reports indicate that pain medication was effective in treating Tankisi's symptoms: a February 2008 report indicates that ibuprofen usually "takes the edge off"; a September 2008 report indicates that she "rarely needs tylenol #3; mostly uses ibuprofen" and

muscle relaxers; and an April 2009 report indicates that her pain was "much improved with Vicodin and ibuprofen." Tankisi states that the ALJ erred in discussing Tankisi's decision to discontinue physical therapy after two visits without mentioning her explanation that the therapy caused her pain. But this argument begs the essential question: the explanation only boosts Tankisi's credibility if we assume that the explanation is credible. On this record, we decline to disturb the ALJ's credibility finding.

**Conclusion**

We have considered all of Tankisi's remaining arguments and found each of them to be without merit. Accordingly, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court