ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Michelle L. Spivey ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiffs reply brief (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted, the Commissioner's motion (Dkt. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her applications for DIB and SSI on October 1, 2013. (Dkt. 7 at 130-39).[2] In her applications, Plaintiff alleged disability beginning March 1, 2013,[3] due to a stroke and neuropathy. (Id. at 159). Plaintiff's applications were initially denied on December 27, 2013. (Id. at 75-80). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Carl Stephan in Albany, New York, on March 24, 2016. (Id. at 27-56). On May 5, 2016, the ALJ issued an unfavorable decision. (Id. at 11-21). Plaintiff requested Appeals Council review (id. at 129); her request was denied on June 8, 2017, making ALJ Stephan's decision the Commissioner's final determination (id. at 5-10). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in *125 the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
*126 DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2017. (Dkt. 7 at 16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 30, 2015, the amended alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "status post CVA, peripheral neuropathy and obesity." (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:
can lift and carry 10 pounds frequently and 20 pounds occasionally; should not be exposed to unprotected height or dangerous moving machinery; and, could occasionally kneel, crouch crawl and balance.
(Id. at 16-17). At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a customer service representative, as that work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Id. at 21). The ALJ's determination at step four resulted in a finding that Plaintiff was not disabled within the meaning of the Act; therefore, the ALJ's analysis did not proceed to step five.
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed to obtain any opinion evidence from an acceptable medical source, and decided the RFC by his own lay interpretation of the medical record; (2) the ALJ failed to properly weigh the opinions in the record; and (3) the ALJ failed to fully develop the record because he failed to obtain treatment notes from Plaintiff's neurologist, Dr. Silvestri. For the reasons set forth below, the Court finds that the ALJ erred in failing to obtain any opinion evidence from an acceptable medical source, and decided the RFC based on his own interpretation of the medical record. This error necessitates remand for further administrative proceedings.
A. The RFC Finding is Unsupported by Substantial Evidence
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant *127 argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
Plaintiff argues that, in this case, the ALJ failed to obtain any opinion evidence from an acceptable medical source and determined her RFC based on his own interpretation of the medical record. The Commissioner argues in response that although an ALJ considers opinions from medical sources, the final responsibility for determining the RFC lies with the ALJ, who makes the determination based on all of the medical and other evidence in the record. (Dkt. 14-1 at 22). In support of this argument, the Commissioner cites to a recent, unpublished Summary Order issued by the Second Circuit Court of Appeals, Monroe v. Commissioner , 676 F. App'x 5 (2d Cir. 2017). (Id. at 23). In Monroe , the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in formulating the RFC. Monroe , 676 F. App'x at 6-7. The Second Circuit held that this was proper "[b]ecause the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes-while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes-that determination was adequately supported by more than a mere scintilla of evidence." Id. at 8-9 ; see also Tankisi v. Commissioner , 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess ... residual functional capacity," a medical source statement or formal medical opinion is not necessarily required); Pellam v. Astrue , 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (upholding the ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).
In reply to Defendant's argument that the Second Circuit's holding in Monroe is controlling, Plaintiff argues that Monroe is distinguishable because in this case, "there are no opinions from treating or any other acceptable medical source , and the treatment notes in the record do not contain valuable assessments of Plaintiff's functional capacities." (Dkt. 15 at 2). Defendant's brief does not address this issue.
The Court agrees with Plaintiff that the ALJ in this case erred in assessing Plaintiff's RFC in the absence of any medical opinion. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " Muhammad v. Colvin , No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4, 2017 U.S. Dist. LEXIS 177763, at *10 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 (quoting Deskin v. Commissioner , 605 F.Supp.2d 908, 911-13 (N.D. Ohio 2008) ). Here, the ALJ did not rely on any treating source opinion evidence in determining Plaintiff's RFC; indeed, the Commissioner concedes that the opinions offered by three of Plaintiff's *128 providers regarding the Plaintiff's RFC were not "medical opinions." (Dkt. 14-1 at 15-21). Accordingly, the issue is whether the record is clear, and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding. Muhammad , 2017 WL 4837583, at *4, 2017 U.S. Dist. LEXIS 177763, at *10.
Having reviewed the record, the Court finds that it is neither clear nor complete and does not contain a useful assessment of Plaintiff's limitations. At the outset, the Court notes that the record is missing treatment records from Dr. Silvestri, Plaintiff's treating neurologist. (Dkt. 7 at 40-41). Plaintiff testified that she visited Dr. Silvestri every two to three months to receive treatment for her March 2013 stroke, and that she has residual effects from her stroke. (Id. at 41). Although the ALJ left the record open for a week following the hearing to accommodate submission of additional medical records (see id. at 55), no such records were received. This gap in the record illustrates that the record in this case is not clear or complete, and it was not appropriate for the ALJ to render an opinion in absence of a medical opinion relating to Plaintiff's functional capacities.
According to his written decision, the ALJ arrived at Plaintiff's RFC by reviewing Plaintiff's medical history beginning in March 2013, which consists mostly of documents relating to treatment notes, examinations, and test results. (Id. at 17-19). The ALJ also considered physical assessments submitted by Elizabeth Stom, MSFT, and Jill Galley, PA-C. (Id. at 19-20). The ALJ assigned little weight to Ms. Galley's opinion, based on the fact that she is not a medical expert recognized by the social security laws and regulation, and other medical evidence in the record did not support her opinion. (Id. at 20). The ALJ ultimately determined Plaintiff's RFC based on her medical records from 2013 and 2014, neurological examinations, and Ms. Stom's functional capacity examination, which noted self-limiting behavior. (Id. ). Based on this information,
[t]he Administrative Law Judge conclude[d] that due to the claimant's complaints of pain in her upper and lower extremities, it is reasonable to limit her lifting and carrying to no more than 10 pounds frequently and 20 pounds occasionally. Due to the claimant's complaints of pain and the side effects of medication ... it is reasonable to find that she should not be exposed to unprotected height or dangerous moving machinery and should occasionally kneel, crouch crawl and balance.
Id. at 21.
The ALJ's method for determining Plaintiff's RFC was inappropriate based on the medical information in the record. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC. See Trippett v. Commissioner , No. 16-CV-908-MJR, 2018 WL 4268917, at *4 2018 U.S. Dist. LEXIS 153053, at *10 (W.D.N.Y. Sept. 7, 2018) ; see also Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 ("[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities ... the Commissioner may not make the connection himself") (citations omitted). The Court has reviewed Plaintiff's medical records and, aside from evaluations submitted by non-medical sources, finds that the records lack information relating Plaintiff's symptoms and diagnoses to specific residual capacities.
*129 This case does not present the situation contemplated by Monroe , where the ALJ rejected the physician's medical assessment, but relied on the underlying treatment notes, which provided contemporaneous medical assessments relevant to the plaintiff's ability to perform sustained gainful activity. Here, the ALJ did not merely disagree with a medical assessment; rather, no acceptable medical source provided an opinion regarding Plaintiff's RFC, and there are no underlying documents supporting any such evaluation. See Pellam , 508 F. App'x at 90 n.2 ("we need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of any expert medical source opinion concerning the claimant's limitations."). The ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and render an opinion as to her functional limitations. See Falcon v. Apfel , 88 F.Supp.2d 87, 91 (W.D.N.Y. 2000) ("It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.") (quotation omitted). On remand, the ALJ should work to further develop the record to obtain a medical opinion as to Plaintiff's limitations.
B. Plaintiffs Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28, 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The record reveals that Plaintiff later amended her alleged onset date to January 30, 2015, "to avoid a potential step one issue in regards to the earnings in 2014." (Dkt. 7 at 55, 244).