16-1042-cv
*Monroe v. Comm'r of Soc. Sec.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand seventeen.

PRESENT:
> PETER W. HALL,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges*,
> J. PAUL OETKEN,[*]
> > *District Judge.*

---

CINDY MONROE,

> *Plaintiff-Appellant,*

v.                                                                                  16-1042-cv

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee,*

---

For Appellant:                            SCOT G. MILLER, Esq., Coughlin & Gerhart, LLP, Binghamton, NY.

---

[*] Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

For Appellee:                                    PETER W. JEWETT, Special Assistant United States Attorney, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Cindy Monroe appeals the decision of the district court affirming the Commissioner of Social Security's denial of her application for disability insurance benefits. Monroe protectively filed an application for disability insurance benefits, claiming inability to work as a result of her bipolar disorder. Following exhaustion of administrative procedures, the district court affirmed the Administrative Law Judge's ("ALJ") decision denying benefits because Monroe maintained a residual functional capacity ("RFC") to "perform a full range of work at all exertional levels." On appeal, Monroe argues (1) that the ALJ improperly failed to assign "controlling weight" to Dr. Wolkoff's medical opinion under the "treating physician" rule and (2) that the ALJ's RFC determination is not supported by "substantial evidence." We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). "[I]t is not our function to determine *de novo* whether [a plaintiff] is disabled." *Brault v. Soc. Sec.*

2

*Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir.2012) (per curiam) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

## I.    "Treating Physician" Rule

Monroe asserts that the ALJ failed to give "controlling weight" to Dr. Wolkoff's medical opinion as required by the Social Security Administration's "treating physician" rule. *See Shaw v. Charter*, 221 F.3d 126, 134 (2d Cir. 2000) (the "treating physician" rule mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted); *accord Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." (internal citations omitted)). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.

When controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record

3

as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ must then "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129.

Here, the administrative record demonstrates that the ALJ's decision not to give controlling weight to Dr. Wolkoff's opinion under the "treating physician" rule was proper considering the substantial evidence contradicting Dr. Wolkoff's assessment. Not only did the ALJ find that Dr. Wolkoff's medical source statement contained internal inconsistencies, but she also determined that his treatment notes contradicted his RFC assessment.[1] While Dr. Wolkoff's RFC assessment said that Monroe would be "off task" between thirty and fifty percent of the time during a typical workday due to her bipolar disorder, it also described Monroe's mood as "stable most of [the] time." Moreover, although Dr. Wolkoff's treatment notes indicate that Monroe's mood was anxious and sad on a number of occasions, the ALJ found his notes more frequently included evaluations describing Monroe's mood as "stable" or "good" and not suicidal. In fact, the treatment notes indicate that during one evaluation, Monroe even expressed that she loved life. Finally, in assessing Dr. Wolkoff's opinion that Monroe had little ability to deal with stress or the public and was limited in behaving in a stable manner in social situations, the ALJ also determined that the finding was refuted by the fact that Monroe had engaged in a range of recreational activities around the same time, including snowmobiling trips to Ontario and Quebec, horseback riding, four-wheeling, and multiple vacation cruises.

---

[1] A medical source statement is "[a] statement about what [the claimant] can still do despite [her] impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of [§ 404.1513] (except in statutory blindness claims)." 20 C.F.R. § 404.1513. An RFC assessment is used to determine if a claimant can do past relevant work, when the claimant's impairment does not meet or equal a listed impairment under the Commissioner's regulations. *See id.* § 404.1520(e). "[R]esidual functional capacity [is] based on all the relevant medical and other evidence in [the claimant's] case." *Id.*

The ALJ comprehensively explained her reasons for discounting Dr. Wolkoff's medical source statement; in so doing, she complied with the dictates of the treating physician rule. *See Burgess*, 537 F.3d at 129. While Dr. Wolkoff's medical source statement is supported by *some* evidence, the ALJ's decision to disregard his opinion is nevertheless substantially supported by the record. The ALJ did not impermissibly "substitute [her] own expertise or view of the medical proof for the treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015). Rather, the ALJ rejected Dr. Wolkoff's opinion because she found it was contrary to his own treatment notes. As did the district court, we defer to the ALJ's well-supported determination. *See Veino*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

## II.    RFC Determination

Monroe makes the related argument that the ALJ's RFC determination is not supported by substantial evidence. She specifically contends that, because the ALJ rejected Dr. Wolkoff's opinion, there was no competent medical opinion that supported the ALJ's RFC determination. Where, however, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Here, although the ALJ ultimately rejected Dr. Wolkoff's medical assessment, she relied on Dr. Wolkoff's treatment notes dating back before the alleged onset date. Not only do Dr. Wolkoff's notes include descriptions of Monroe's symptoms, but they also provide contemporaneous medical assessments of Monroe's mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity. The ALJ also considered Dr. Wolkoff's well-documented notes

5

relating to Monroe's social activities relevant to her functional capacity—such as snowmobile trips, horseback riding, and going on multiple cruise vacations. Because the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes—while at the same time rejecting his *post hoc* medical opinion ostensibly based on the observations memorialized in those notes—that determination was adequately supported by more than a mere scintilla of evidence. *See Tankisi*, 521 F. App'x at 34 (affirming ALJ's RFC determination based on extensive medical record despite the fact that the record did not include formal opinions as to claimant's RFC); *cf.* 20 C.F.R. § 1527(d)(2) ("Although we consider opinions from medical sources on issues such . . . [as a claimant's] residual functional capacity . . . the final responsibility for deciding [this] issue[] is reserved to the Commissioner.").

Likewise, because the ALJ based its RFC determination on Dr. Wolkoff's years' worth of treatment notes, it was not necessary for the ALJ to seek additional medical information regarding Monroe's RFC. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." (internal quotation marks omitted)); *see also Pellam*, 508 F. App'x at 90 (2d. Cir. 2013) (summary order) (concluding that ALJ had no obligation to supplement record by acquiring additional medical information where ALJ had all of the claimant's treating physician's treatment notes and consulting examining physician's opinion supported ALJ's assessment of RFC).

Finally, we find no merit in Monroe's argument that the ALJ committed reversible error by concluding that the state agency psychologist's opinion was "inconsistent" with that of Dr. Wolkoff's when, in fact, the state psychologist found there was "insufficient evidence" to conclude whether a mental impairment existed. As also concluded by the district court, we agree that any such error was harmless, since Monroe has not identified any prejudice and the record establishes

6

that the error did not affect the ALJ's decision. *Cf. Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (internal quotations marks and alterations omitted)). The ALJ's decision to give little weight to Dr. Wolkoff's RFC assessment is grounded in the substantial evidence contradicting his opinion; the ALJ's decision does not rest on the misconception that Dr. Wolkoff's opinion conflicts with that of the state psychologist.

For all the foregoing reasons, the district court's order affirming the ALJ's decision denying Monroe's application for disability insurance benefits is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7