ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff George Anthony Smith ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted in part and the Commissioner's motion (Dkt. 14) is denied.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on January 15, 2014. (Dkt. 8 at 16, 65-66).[2] In his applications, Plaintiff alleged disability beginning May 30, 2013, due to high blood pressure, diabetes, a knee impairment, a back impairment, and a gunshot injury from "years ago." (Id. at 16, 67). Plaintiff's applications were initially denied on April 8, 2014. (Id. at 16, 87-94). At Plaintiff's request, a hearing was held before administrative *220 law judge ("ALJ") Gregory M. Hamel on December 3, 2015. (Id. at 16, 34-64). Plaintiff and his attorney appeared in Rochester, New York, and ALJ Hamel presided over the hearing from Alexandria, Virginia. (Id. at 16). On December 17, 2015, the ALJ issued an unfavorable decision. (Id. at 16-29). Plaintiff requested Appeals Council review; his request was denied on April 6, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
*221 The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2018. (Dkt. 8 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 30, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of type II diabetes mellitus (with peripheral neuropathy and non-proliferative diabetic retinopathy ) and lumbosacral degenerative disc disease (with low back pain). (Id. at 19). The ALJ further found that Plaintiffs medically determinable impairments of gastroesophageal reflux disorder, hypertension, chronic renal insufficiency, and status post gunshot wound were non-severe. (Id. ). With respect to Plaintiff's representations that he suffers from knee arthritis, alcohol dependence, and cannabis dependence, the ALJ concluded that these were not medically determinable impairments. (Id. at 19-20).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 20). The ALJ particularly considered the criteria of Listings 1.04, 2.02, 1.00, 2.00, 4.00-6.00, 8.00, 11.00, and 12.00 in reaching his conclusion. (Id. ).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:
can occasionally climb stairs, balance, stoop, kneel, crouch and crawl. He must not climb ladders or similar devices. [Plaintiff] cannot work in hazardous environments such as at heights or around dangerous machinery. He cannot work in exposure to temperature extremes, in exposure to high levels of humidity and wetness, or in exposure to high concentrations of dust, fumes, gases and other pulmonary irritants.
(Id. at 21). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 27).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of small parts assembler and mailroom clerk. (Id. at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 29).
*222 II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ erred in evaluating opinion evidence from Nurse Practitioner Denise Bilsback (hereinafter, "NP Bilsback"); (2) the ALJ improperly based the RFC finding on his own, lay interpretation of the medical record; and (3) the ALJ erred by failing to develop the record. (Dkt. 11-1 at 13-24). For the reasons set forth below, the Court finds that the ALJ's assessment of Plaintiff's RFC was unsupported by substantial evidence and that this error necessitates remand for further administrative proceedings.
A. The RFC Finding is Not Supported by Substantial Evidence
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
As a threshold matter, Plaintiff characterizes NP Bilsback as a "treating professional source," and contends that her opinion is subject to the treating physician rule. (See Dkt. 11-1 at 13). However, NP Bilsback cannot give a "treating source" opinion. Because they are not acceptable medical sources pursuant to the Regulations, nurse practitioners cannot be considered treating sources subject to the treating physician rule. See Taylor v. Colvin , No. 14-cv-0928 (GTS), 2016 WL 1049000, at *5, 2016 U.S. Dist. LEXIS 31312, at *16 (N.D.N.Y. Mar. 11, 2016) ("an opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations"). Accordingly, NP Bilsback's opinions are not subject to the treating physician rule, and they are therefore not entitled to controlling weight. Nonetheless, and as with all the medical opinions of record, the ALJ was required to consider NP Bilsback's opinion in the context of the record as a whole.
The record in this matter contains opinion evidence from four sources: (1) a March 2014 consultative examination by Harbinder Toor, M.D.; (2) a September 2014 opinion statement from NP Bilsback; (3) a January 2015 functional assessment by Seema Khaneja, M.D.; and (4) a November 2015 medical source statement from NP Bilsback. (Dkt. 8 at 312-18, 384-94). NP Bilsback opined in November 2015 that Plaintiff, with normal breaks, could stand and/or walk for less than two hours *223 and sit for at least six hours in an eight-hour workday. (Id. at 394). She further opined that Plaintiff could lift and carry up to 10 pounds occasionally and rarely lift and carry over twenty pounds. (Id. ).[3] Similarly, Dr. Khaneja's physical examination revealed that Plaintiff had an abnormal gait, difficulty heel and toe walking, and could squat to thirty percent. (Id. at 389). Dr. Khaneja opined that Plaintiff, during a normal workday: could sit for two to four hours; walk and/or stand for one to two hours; could perform pushing, pulling and bending movements for one to two hours; use his hands for two to four hours; could lift or carry 10 pounds occasionally; climb stairs for one to two hours; and was very limited in his ability to use public transportation. (Id. at 390). In terms of employability, Dr. Khaneja found that Plaintiff was unable to participate in any activities, except treatment or rehabilitation. (Id. at 391).
The ALJ assigned "limited weight" to the opinions of NP Bilsback and Dr. Khaneja because they were inconsistent with the overall evidence in the record, "especially [Plaintiff's] admitted activity level." (Id. at 24). In particular, the ALJ discussed Plaintiff's testimony regarding his daily living, including that he performed household chores, yard work, and went shopping. (Id. at 23). The ALJ further noted that NP Bilsback was not an acceptable medical source, and Dr. Khaneja's opinion was based on a one-time assessment. (Id. at 24). It is not entirely clear from the written determination which portions of these opinions the ALJ found credible, and which portions he rejected.
The Court initially notes that "a reason ... that relies on a mischaracterization of the record cannot be a good reason [for disregarding a treating source's opinion]." Wilson v. Colvin , 213 F.Supp.3d 478, 485 (W.D.N.Y. 2016) (internal quotation marks omitted). In the written determination, the ALJ summarized Plaintiff's testimony relating to his activities of daily living, explaining that while Plaintiff:
indicated that he was unable to work due to his leg pain, back pain and vision issues, he performed a wide range of activities of daily living including cooking, cleaning, grocery shopping and yard work. He was also able to drive, pick people up from work, count change, watch television and read. These reported activities detract from [Plaintiff's] credibility regarding the extent of his DM and back related symptoms[,] as a person in as much distress as [Plaintiff] alleged due to DM and degenerative disc disease would be expected to be much more limited in his daily activities.
(Dkt. 8 at 23).
While Plaintiff testified that he was able to perform certain activities of daily living, such as cooking and other household chores, he clarified that because of pain, he needed to take breaks when performing these activities. (Id. at 45 ("Like with my stomach or my leg or foot and back pain ... I just motivate myself to get up and clean or do a little something around the house, and then I sit down and relax and get up and do a little more"); id. at 50-51 (Plaintiff spends time on housework, including cooking and cleaning, but "he [has] chairs, so [he] [can] ... sit down");
*224 id. at 51 (Plaintiff has to take breaks between tasks, for approximately 15 to 30 minutes); id. at 52 (sometimes Plaintiff has to lay down during breaks) ). By failing to note that Plaintiff testified at length that although he could perform some houseful chores, he needed to take breaks, the ALJ mischaracterized Plaintiff's testimony regarding his activities of daily living - a mischaracterization that created the impression that Plaintiff's activity level conflicted with the medical opinions of NP Bilsback and Dr. Khaneja, both of whom opined that Plaintiff was able to perform work-related tasks for only short periods of time.[4] This was error. See Wilson , 213 F.Supp.3d at 485 (ALJ improperly dismissed treating physician opinion that the plaintiff had significantly impaired concentration and persistence, when he mischaracterized the plaintiff's testimony that he enjoyed "mentally stimulating puzzles" and failed to note that the plaintiff qualified this activity by saying that he could only focus on a puzzle for about 10 to 15 minutes); see also Lloyd v. Comm'r of Soc. Sec. , No. 1:17-C V-00644 EAW, 2018 WL 4629129, at *4, 2018 U.S. Dist. LEXIS 166740, at *12 (W.D.N.Y. Sept. 27, 2018) ("The ALJ's decision mischaracterized the record, making it appear without basis that Plaintiff had used her right hand, fingers, and arm in a manner inconsistent with [the treating physician's] opinion during the floor installation project. This was improper and cannot constitute a good reason for rejecting the opinion of a treating physician").
The ALJ's remaining reason for discounting the opinions of NP Bilsback and Dr. Khaneja was based on their status as non-treating sources. (See Dkt. 8 at 24 ("Furthermore, Ms. Bilsback is not an acceptable medical source and Dr. Khaneja's opinion was based on a one-time examination of [Plaintiff]") ). Standing alone, these are not valid reasons for rejecting the opinions relating to Plaintiff's functional limitations. See Rivera v. Berryhill , No. 3:16-cv-01842 (JAM), 2018 WL 1521824, at *5, 2018 U.S. Dist. LEXIS 51605, at *13 (D. Conn. Mar. 28, 2018) ("An ALJ should not reject the opinion of a nonmedical treating source such as a nurse practitioner based solely on the fact that the source is not 'medical' "); see also Fuentes v. Colvin , No. 13-CV-6201(P), 2015 WL 631969, at *8, 2015 U.S. Dist. LEXIS 17915, at *20-21 (W.D.N.Y. Feb. 13, 2015) ("The opinion of a consultative examiner can constitute substantial evidence supporting an ALJ's decision") (internal quotation and citation omitted). Accordingly, the ALJ failed to give any valid reason for rejecting the opinions of NP Bilsback and Dr. Khaneja.
The ALJ also failed to properly assess Dr. Toor's opinion. On March 26, 2014, Dr. Toor examined Plaintiff and issued a medical source statement regarding Plaintiff's functional limitations. (Dkt. 8 at 313-16). Dr. Toor noted that Plaintiff "appeared to be in moderate pain," and that his gait was "abnormal, unsteady, with a tendency to lose balance." (Id. at 314). Dr. Toor further noted that Plaintiff "declined to walk on heels and toes." (Id. ). Although Plaintiff used no assistive devices, did not need help changing for the exam, and was able to rise from the chair without difficulty, he had difficulty getting on and off the exam table. (Id. ). Dr. Toor's physical exam of Plaintiff's musculoskeletal system revealed *225 some limitations, including lumbar spine flexion of 20 degrees, extension 0 degrees, and lateral flexion and lateral rotation 30 degrees, bilaterally. (Id. at 315). Straight leg raise tests were positive, both sitting and supine, bilaterally. (Id. ). Dr. Toor also noted that for Plaintiff's knees, movement, flexion and extension were at 145 degrees, with tenderness in both knees. (Id. ). A neurologic examination revealed tingling and numbness in the lower part of the legs and feet. (Id. ). Plaintiff's extremities, including his knees, and his lower legs and feet, were tender. (Id. ). Based on this information, Dr. Toor rated Plaintiff's prognosis as "fair," and opined that "[Plaintiff] has moderate to severe limitations in standing, walking, squatting, bending, and lifting. Pain interferes with his balance. He has moderate limitations to sitting a long time." (Id. at 316). The ALJ assigned "little weight" to the opinion of Dr. Toor, because it was "vague" and did not provide a "function-by-function analysis of [Plaintiff's] work related restrictions." (Id. at 25). The ALJ also referred to the assessed RFC for light work, as well as limitations relating to climbing, balancing, stooping, kneeling, crouching and crawling, and limitations in Plaintiff's ability to work in hazardous environments. (Id. ). Notably, in assigning "little weight" to Dr. Toor's opinion, the ALJ did not point to any conflicting opinion evidence, or conflicting objective medical evidence, in the record. See Marsh v. Berryhill , 1:16-CV-00727(MAT), 2018 WL 5880928, at *5, 2018 U.S. Dist. LEXIS 192611, at *14 (W.D.N.Y. Nov. 9, 2018) (an ALJ's "general citation to the evidence as a whole, without identifying any specific records or facts that support[ ] his conclusion," is insufficient). The Court therefore agrees with Plaintiff that the ALJ erred in his assessment of the medical opinions of record.
Plaintiff further argues that because the ALJ rejected all the medical opinions of record, the ALJ failed to rely on opinion evidence from an acceptable medical source and determined Plaintiff's RFC based on his own lay interpretation of the medical record. (Dkt. 11-1 at 18). The Commissioner argues in response that although an ALJ considers opinions from medical sources, the final responsibility for determining the RFC lies with the ALJ, who makes the determination based on all of the medical and other evidence in the record. (Dkt. 14-1 at 22). In support of this argument, the Commissioner cites to a recent, unpublished Summary Order issued by the Second Circuit Court of Appeals, Monroe v. Comm'r of Soc. Sec. , 676 F. App'x 5 (2d Cir. 2017). (Id. at 27-28). In Monroe , the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in formulating the RFC. Monroe , 676 F. App'x at 6-7. The Second Circuit held that this was proper "[b]ecause the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes-while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes-that determination was adequately supported by more than a mere scintilla of evidence." Id. at 8-9 ; see also Tankisi v. Comm'r of Soc. Sec. , 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess ... residual functional capacity," a medical source statement or formal medical opinion is not necessarily required); Pellam v. Astrue , 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (upholding the ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).
*226 The Court agrees with Plaintiff that the ALJ in this case erred in assessing Plaintiff's RFC. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " Muhammad v. Colvin , No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4, 2017 U.S. Dist. LEXIS 177763, at *10 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 (quoting Deskin v. Comm'r of Soc. Sec. , 605 F.Supp.2d 908, 911-13 (N.D. Ohio 2008) ). Here, the ALJ effectively rejected the medical opinion evidence in the record from NP Bilsback, Dr. Khaneja, and Dr. Toor. Although none of these opinions were subject to the treating physician rule, as noted above, the ALJ's reasoning for rejecting these opinions was improper or unclear. Accordingly, the issue is whether the record is clear, and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding. Muhammad , 2017 WL 4837583, at *4, 2017 U.S. Dist. LEXIS 177763, at *10.
Having reviewed the record, the Court finds that it is not complete and does not contain a useful assessment of Plaintiff's limitations. At the outset, the Court notes that the ALJ did not have the opportunity to review certain treatment records from 2014 and 2015 prior to issuing his decision. Plaintiff points specifically to a September 2014 record from Priscilla Martin, M.D. (Dkt. 11-1 at 21). Dr. Martin began following Plaintiff's case in April 2014. (Dkt. 8 at 430). At a visit in September 2014, Dr. Martin found that Plaintiff's condition had worsened due to his increased difficulties walking. (Id. at 452 (Plaintiff noted to be "with continued lower extremity diabetic neuropathy. Notes numbness and burning of lower extremities bilaterally and swelling.... Is with increased difficulty ambulating secondary to deformation of foot and neuropathy but is without decreased strength. Currently walks with cane and is more unsteady than on previous evaluations") ). Dr. Martin's treatment notes are particularly significant, as they conflict with Plaintiff's ability to perform light work. The Court is cognizant that an ALJ need not "reconcile explicitly every conflicting shred of medical testimony." Galiotti v. Astrue , 266 F. App'x 66, 67 (2d Cir. 2008) (citation omitted). Here, however, the ALJ did not have the opportunity to view records containing medical evidence favorable to Plaintiff and thereafter make an informed decision as to whether these records would alter the assessed RFC. The Court therefore determines that the record was not complete at the time the ALJ assessed Plaintiff's RFC.
Defendant points to several pieces of medical evidence she contends allowed the ALJ to assess Plaintiff's RFC, including treatment notes from NP Bilsback, Plaintiff's activity level, noncompliance with treatment, and search for work in 2013. (See Dkt. 14-1 at 18-28). What Defendant does not point to is evidence with bearing on Plaintiff's functional capacity. Rather, the ALJ discussed at several points in the written determination how Plaintiff's reported activities of daily living were inconsistent with the medical opinion evidence in the record. (See Dkt. 8 at 21, 23, 24). See Brown v. Barnhart , 418 F.Supp.2d 252, 262 (W.D.N.Y. 2005) (ALJ "improperly substituted his own opinion for the opinions ... of plaintiff's treating physicians" where he "found plaintiff not disabled, based primarily on her activities of daily living").
*227 The ALJ also on multiple occasions referred to outpatient hospital visit notes from Strong Memorial Hospital that did not assess Plaintiff's physical limitations in formulating the RFC finding. (See Dkt. 8 at 24, 25). Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC. See Trippett v. Comm'r of Soc. Sec. , No. 16-CV-908-MJR, 2018 WL 4268917, at *4, 2018 U.S. Dist. LEXIS 153053 at *10 (W.D.N.Y. Sept. 7, 2018) ; see also Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 ("[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities ... the Commissioner may not make the connection himself.") (citations omitted). The Court has reviewed Plaintiff's medical records and, aside from the opinion evidence rejected by the ALJ, finds that the records lack information relating Plaintiff's symptoms and diagnoses to specific residual capacities. Accordingly, the RFC finding is not supported by substantial evidence, and this error necessitates remand. See Reyes v. Berryhill , No. 17-CV-1194, 2018 WL 5839276, at *3, 2018 U.S. Dist. LEXIS 191470, at *7 (W.D.N.Y. Nov. 8, 2018).
B. Plaintiff's Remaining Argument
As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Before issuing her more recent November 2015 opinion statement, NP Bilsback completed an opinion statement for the Monroe County Department of Human Services in September 2014. (Dkt. 8 at 384-87). The 2014 form is mostly blank, but does indicate that Plaintiff is able to work for up to 40 hours per week and does not have any limitations. (Id. at 385).

At an earlier point in the written determination, the ALJ acknowledged that "Mr. Smith noted that he needed to take breaks in between his chores due to leg and foot pain." (Dkt. 8 at 21). However, the ALJ did not explain why he rejected Plaintiff's testimony regarding his need to take breaks, nor did he explain what other evidence in the record contradicted Plaintiff's claim that he needed to take breaks.