ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Akila D. Johnson ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, Defendant's motion (Dkt. 16) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for SSI on July 12, 2013. (Dkt. 10 at 15, 164, 195).[2] In her application, Plaintiff alleged disability beginning February 17, 2013, due to depression, bipolar disorder, anxiety, and post-traumatic stress disorder. (Id . at 15, 163, 200). Plaintiff's application was initially denied on October 13, 2013. (Id . at 15, 95-99). A hearing was held before administrative law judge ("ALJ") John P. Costello in Rochester, New York, on February 9, 2016. (Id . at 15, 44-73). On March 29, 2016, the ALJ issued an unfavorable decision. (Id . at 12-25). Plaintiff requested Appeals Council review; her request was denied on June 30, 2017, making the ALJ's determination the Commissioner's final decision. (Id . at 5-8). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration *290 ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id . § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id . § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id . § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id . § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id . § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id . § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.
*291 Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 12, 2013, the application date. (Dkt. 10 at 17).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of depression, bipolar disorder, anxiety, post-traumatic stress disorder, knee and shoulder dysfunction, asthma, and obesity. (Id .).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id . at 17). The ALJ particularly considered the criteria of Listings 1.02, 3.03, 12.04, and 12.06 in reaching his conclusion. (Id . at 17-19).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that Plaintiff:
is limited to performing only simple, routine tasks; is limited to performing only low stress work, defined as only occasional changes in the work setting; must work primarily alone with only occasional supervision; and is able to have occasional exposure to respiratory irritants, such as dust, odors, fumes, temperature extremes, and humidity.
(Id . at 19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id . at 23).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeper/cleaner and garment folder. (Id . at 24-25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id . at 25).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ did not adequately explain the weight given to the medical opinion of Dr. Lin, the consultative psychiatric examiner, and (2) the ALJ assessed Plaintiff's physical RFC in the absence of a medical opinion. (Dkt. 12-1 at 1, Dkt 17 at 3). For the reasons set forth below, the Court finds that the ALJ erred in failing to obtain any opinion evidence from an acceptable medical source relating to Plaintiff's severe physical limitations, and determined Plaintiff's RFC based on his own interpretation of the medical record. This error necessitates remand for further administrative proceedings.
A. The RFC Finding is Unsupported by Substantial Evidence
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id . However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of *292 bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030 at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
Plaintiff testified to her impairments, both physical and mental, at the administrative hearing. While Plaintiff's attorney noted that "the claimant's most severe impairments are her mental health conditions" (Dkt. 10 at 48), he also explained that "[s]he does have some pain as well. She's had some treatment for her left knee throughout the - since the application date. She's had the injection, which was noted to not improve her conditions. Her weight has affected her knee pain as well, which has been noted in the file. I think the record reflects that. The occupational base for sedentary work in the unskilled basis would be eroded due to her pain in her knee as well." (Id . at 49). When questioned about her knee pain, Plaintiff testified that "I have arthritis in both my knees and I guess it's breaking my knee down. It's almost bone on bone the last x-ray I had and they told me if I don't lose weight, then I'm going to have to have a knee replacement. All the doctors tell me that I have to lose weight." (Id . at 66). Plaintiff further testified that she had talked to Highland Bariatric about undergoing weight loss surgery, which she planned to do in the future, as well as issues with her right shoulder, which "dislocates a lot." (Id .).
At step two, the ALJ found that Plaintiff had several severe impairments, including "knee and shoulder dysfunction." (Id . at 17). The ALJ assessed an RFC for light work, with additional limitations largely relating to Plaintiff's mental functioning, rather than her physical functioning. (Id . at 19). In explaining how he arrived at an RFC for light work, the ALJ summarized the evidence relevant to Plaintiff's asthma, knee problems, shoulder problems, and her obesity :
X-rays showed significant medial osteoarthritis bilaterally with lateral and patellofemoral arthritis bilaterally. She has been treated with cortisone injections in both knees. Treatment notes indicate that the injections were helpful. To address her asthma, [Plaintiff] uses Albuterol. The record does not include any physical assessments indicating that [Plaintiff] has physical limitations. I have considered the effect of obesity in determining her residual functional capacity and limitations are included therein. [Plaintiff] is obese and has osteoarthritis, which supports a residual functional capacity assessment of light. However, I note that [Plaintiff] has been a candidate for bariatric surgery. Treatment notes indicate that weight loss would likely reduce [Plaintiff's] symptoms associated with arthritis. However, [Plaintiff] needs support from a therapist to undergo surgery, and as stated previously, she has not been compliant with mental health treatment. The record *293 suggests that if [Plaintiff] were compliant with mental health treatment, her physical health might also improve.
(Id . at 23) (internal citations omitted).
Defendant contends that it was not necessary for the ALJ to obtain an opinion relating to Plaintiff's physical functional limitations. (Dkt. 16-1 at 29). In support of this argument, Defendant cites to Monroe v. Colvin , 676 F. App'x 5 (2d Cir. 2017) and Johnson v. Colvin , 669 F. App'x 44 (2d Cir. 2016). ( Id . ). In Monroe , the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in determining the Plaintiff's RFC. Monroe , 676 F. App'x at 6-7. The Second Circuit held that this was proper "[b]ecause the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes-while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes-that determination was adequately supported by more than a mere scintilla of evidence." Id . at 8-9 ; see also Johnson v. Colvin , 669 F. App'x at 46 (proper for ALJ to rely on Plaintiff's own testimony, as well as a letter from a doctor stating that Plaintiff had severe functional limitations, but that he made improvement following surgery).
"While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " Muhammad v. Colvin , No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4, 2017 U.S. Dist. LEXIS 177763 at * 10 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 (quoting Deskin v. Comm'r of Soc. Sec. , 605 F.Supp.2d 908, 911-13 (N.D. Ohio 2008) ). Having reviewed the record, the Court finds that it does not contain a useful assessment of Plaintiff's physical limitations.
According to his written decision, the ALJ determined Plaintiff's RFC by considering: the results of x-rays; her cortisone injections; her use of albuterol for asthma ; her obesity and osteoarthritis ; possible weight loss surgery ; and her daily activities, the ALJ's discussion of which pertains mostly to Plaintiff's mental health issues. (Dkt. 10 at 23). None of these pieces of evidence shed any light on Plaintiff's physical functional limitations. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ may not rely on the record in determining the plaintiff's RFC. See Trippett v. Comm'r of Soc. Sec. , No. 16-CV-908-MJR, 2018 WL 4268917, at *4, 2018 U.S. Dist. LEXIS 153053 at *10 (W.D.N.Y. Sept. 7, 2018) ; see also Quinto , 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *37 ("[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities ... the Commissioner may not make the connection himself.") (citations omitted). The Court has reviewed Plaintiff's medical records and finds that they lack information relevant to the type of functional limitations needed to properly assess a physical RFC, nor has Defendant identified any such evidence. Rather, Defendant explains that the ALJ considered that Plaintiff "show[ed] improvement with treatment," her daily activities, her physical evaluations, and possible bariatric surgery, in assessing Plaintiff's RFC. (Dkt. 16-1 at 29-30).
*294 This case does not present the situation contemplated by Monroe , where the ALJ rejected the physician's medical assessment, but relied on the underlying treatment notes, which provided contemporaneous medical assessments relevant to the plaintiff's ability to perform sustained gainful activity. Here, the ALJ did not merely disagree with a medical assessment; rather, no acceptable medical source provided an opinion regarding the physical portion of Plaintiff's RFC, and there are no underlying documents supporting any such evaluation. See Pellam v. Astrue , 508 F. App'x 87, 90 n.2 (2d Cir. 2013) ("we need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of any expert medical source opinion concerning the claimant's limitations."). The ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and render an opinion as to her physical functional limitations. See Falcon v. Apfel , 88 F.Supp.2d 87, 91 (W.D.N.Y. 2000) ("It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.") (quotation omitted).
Moreover, this is not the type of case where Plaintiff's impairments "were so minimal that the ALJ could permissibly make a common sense judgment as to Plaintiff's [physical RFC]." Johnson v. Berryhill , No. 1:16-cv-00974-MAT, 2018 WL 3688313, at *4, 2018 U.S. Dist. LEXIS 130232 at *13 (W.D.N.Y. Aug. 2, 2018) ; see also Zayas v. Colvin , No. 15-CV-6312-FPG, 2016 WL 1761959, at *4, 2016 U.S. Dist. LEXIS 58134 at *12 (W.D.N.Y. May 2, 2016) ("Depending on the circumstances, like when the medical evidence shows only minor physical impairments. an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment").
The record reveals ongoing knee pain, most likely related to Plaintiff's obesity, originating as far back as 2012. (See Dkt. 10 at 286, 432, 557). Plaintiff continued complaining of knee pain in 2013. (See, e.g., id . at 460). An x-ray of Plaintiff's knees in 2014 revealed that her arthritis had "mildly progressed." (Id . at 432). By 2015, Plaintiff had received at least one corticosteroid injection to her right knee, and x-rays showed "significant medial osteoarthritis bilaterally with lateral and patellofemoral arthritis bilaterally." (Id . at 433-34). Treatment notes reveal that "[g]iven the nature of her injury and the degenerative changes shown on her x-ray, she would be a good candidate for corticosteroid injection to the left knee in clinic today.... She has been given a script for physical therapy for strengthening and range of motion of bilateral knees." (Id . at 434). Plaintiff continued to experience knee pain at a follow-up visit in May 2015, when she reported ongoing knee pain and exhibited decreased range of motion and swelling in her left knee. (Id . at 554, 556). In other words, Plaintiff's knee pain was an ongoing problem for which she received significant treatment, and a medical opinion relating to Plaintiff's physical functional limitations is required. See Zayas , 2016 WL 1761959, at *4, 2016 U.S. Dist. LEXIS 58134, at *12 (concluding that medical opinion assessing the plaintiff's functional impairments required where the plaintiff "had several complicated and longstanding impairments"). On remand, the ALJ should work to further develop the record to obtain a medical opinion as to Plaintiff's physical limitations.
B. Plaintiff's Remaining Argument
As set forth above, Plaintiff has identified an additional reason why she contends *295 the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reason previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592 at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 16) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.