ELIZABETH A. WOLFORD, United States District Judge *388 INTRODUCTION
Represented by counsel, Plaintiff Adam Franklin Dye ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 12), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 12) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on February 3, 2014. (Dkt. 7 at 31, 113-14).[1] In his applications, Plaintiff alleged disability beginning December 10, 2010, due to: two fractured discs (L4 and L5); two herniated discs (S1 and S2); sciatica; chronic pain in his back, left leg, left hip, and right wrist; chronic headaches ; and a torn right meniscus. (Id. at 31, 100-01). Plaintiff's applications were initially denied on May 22, 2014. (Id. at 31, 119-34). A video hearing was held before administrative law judge ("ALJ") Roxanne Fuller on October 1, 2015. (Id. at 31, 60-99). Plaintiff appeared in Rochester, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (Id.). On January 22, 2016, the ALJ issued an unfavorable decision. (Id. at 28-55). Plaintiff requested Appeals Council review; her request was denied on August 9, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 8-12). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo *389 whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v.City of New York, 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2015. (Dkt. 7 at 33). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 10, 2010, the alleged onset date. (Id. ).
*390 At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "cervical and lumbar degenerative disc disease ; arthrosis of the right wrist and thumb; intermittent explosive disorder ; antisocial personality disorder ; depression with anxiety; and history of substance abuse." (Id. at 34). The ALJ further found that Plaintiff's medically determinable impairment of obesity was non-severe. (Id. ). With respect to Plaintiff's representation that he suffers from a learning disability, the ALJ concluded that this was not a medically determinable impairment. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 34). The ALJ particularly considered the criteria of Listings 1.02(a), 1.04, 12.04, 12.08, and 12.09 in reaching her conclusion. (Id. at 35-37).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations:
occasional climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, crawl; frequent handling objects, this is gross manipulation with the right, dominant hand; frequent fingering objects, that is fine manipulation with the right, dominant hand; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; able to perform simple, routine, repetitive tasks; have no interaction with the public; and only occasional, superficial interaction with co-workers and supervisors.
(Id. at 37). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 52).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of table clerk, document preparer, and printed circuit board assembly touch up screener. (Id. at 53-54). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 55).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ rejected all opinion evidence relating to Plaintiff's physical limitations, and therefore assessed the physical RFC based on her lay interpretation of the evidence; (2) the ALJ assessed Plaintiff's mental RFC in the absence of opinion evidence; and (3) the ALJ improperly diminished Plaintiff's credibility. (Dkt. 8-1 at 17-30). For the reasons set forth below, the Court finds that the RFC is not supported by substantial evidence because the ALJ assessed Plaintiff's mental RFC in the absence of opinion evidence. This error necessitates remand for further administrative proceedings.
A. The RFC Finding is Unsupported by Substantial Evidence
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified *391 to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill, No. 3:17-cv-00024 (JCH), 2017 WL 6017931 at *12, 2017 U.S. Dist. LEXIS 20030 at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
At the administrative hearing, Plaintiff testified that he was diagnosed with "manic depressive bipolar, ADHD, post traumatic stress disorder and OCD," and that these conditions made him "[q]uite moody. Obviously, I get depressed a lot, cry sometimes, working - like even when I was younger, I couldn't really work with a lot of people. My mood would go way off, hence, how many jobs I've had." (Dkt. 6 at 74). Plaintiff explained that he was nervous working around people and had "problems dealing with ... other people telling me what I can and can't do and it just doesn't make me feel very good." (Id ). Plaintiff recounted an incident when he was suspended due to an altercation with another individual at work. (Id. at 75). Plaintiff explained that he attended therapy at Wayne Behavioral Health every month for "anger management, one-on-one counseling and men's alternative to violence," but that he had not been to an appointment in two months, due to his feeling overwhelmed by his divorce and caring for his children. (Id. at 83).
The ALJ found that Plaintiff had multiple severe impairments, including several severe mental impairments. (See id. at 34 (assessing Plaintiff with the severe impairments of cervical and lumbar degenerative disc disease ; arthrosis of the right wrist and thumb; intermittent explosive disorder ; antisocial personality disorder ; depression with anxiety; and history of substance abuse) ). At step three, the ALJ found that Plaintiff had either mild or marked limitations in several areas of mental functioning. (See id. at 35-36 (Plaintiff has mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation) ). The ALJ included limitations relating to Plaintiff's mental impairments in the RFC, including that Plaintiff perform simple, routine, repetitive tasks; have no interaction with the public; and only occasional, superficial interaction with co-workers and supervisors. (Id. at 37).
In explaining how she assessed Plaintiff's mental RFC, the ALJ discussed Plaintiff's mental health treatment, noting that his mental impairments"were not as limiting as alleged and do not preclude him from all work." (Id. at 46). The ALJ focused specifically on the fact that Plaintiff did not receive formal mental health treatment from 2011 through 2014 and, when he received treatment, the record revealed that he was not as limited as he alleged. (Id. at 47-48). Notably missing from the ALJ's discussion is an assessment of opinion evidence for work-related limitations caused by Plaintiff's severe mental impairments *392 . This is because there is no such evidence in the record.
Rather than relying on opinion evidence - which generally contains information relevant to specific functional limitations - to assess Plaintiff's mental RFC, the ALJ used her own lay judgment to evaluate Plaintiff's mental health treatment history. For example, the ALJ states that "[t]he record supports the claimant remains capable of performing simple, routine, and repetitive tasks." (Id. at 48). In arriving at this conclusion, the ALJ discussed the following: Plaintiff did not receive formal mental health treatment until 2015; prior to that time, Plaintiff was prescribed medications to treat his mental health conditions; doctor's observations of Plaintiff's mental state; Plaintiff's ability to care for his children, with the help of his parents; and Plaintiff's collecting rent in the trailer park where he lived. (Id. ). Similarly, the ALJ explained that the RFC accommodates Plaintiff's "allegations that he angers easily and has increased irritability," "objective findings of a constricted, guarded, and anxious mood and affect," as well as Plaintiff's "subjective allegations of irritability with difficulty controlling his anger and subsequent physical violence." (Id. ). In explaining how she arrived at these accommodations - which include no interaction with the public and only occasional, superficial interaction with co-workers and supervisors - the ALJ discussed that Plaintiff had a good response to Cymbalta ; Plaintiff presented as calmer after one physical therapy session; and Plaintiff did not continue with mental health treatment at Wayne Behavioral Health. (Id. ). The ALJ concluded that because Plaintiff did not continue with treatment, "he remains capable of occasional, superficial interaction with co-workers and supervisors." (Id. ).
In the absence of opinion evidence, the ALJ's equating this type of information - treatment notes, observations by Plaintiff's providers, Plaintiff's medications and response to treatment, and activities of daily living -to specific functional capacities, was improper. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ may not rely on the record in determining the plaintiff's RFC. See Trippett v. Comm'r of Soc. Sec. , No. 16-CV-908-MJR, 2018 WL 4268917 at *4, 2018 U.S. Dist. LEXIS 153053 at *10 (W.D.N.Y. Sept. 7, 2018) ; see also Wilson v. Colvin, No. 13-CV-6286P 2015 WL 1003933 at *21, 2015 U.S. Dist. LEXIS 27804 at *55 (W.D.N.Y. Mar. 6, 2015) ("Although there are many treatment notes in the record, they generally contain bare medical findings and do not address or illuminate how [the plaintiff's] impairments affect her physical ability to perform work-related functions.").
The Court is cognizant that where the record reflects only minor impairments, the ALJ may, in her discretion, assess an RFC in the absence of opinion evidence. See Wilson , 2015 WL 1003933 at *21, 2015 U.S. Dist. LEXIS 27804, at *54-55 ("under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment....") (internal quotations and citation omitted). However, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized.' " Lilley v. Berryhill, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018) (quoting *393 Nasci v. Colvin , No. 6:15-CV-0947 (GTS), 2017 WL 902135 at *9, 2017 U.S. Dist. LEXIS 31937 at *26 (N.D.N.Y. Mar. 7, 2017) ); see also Deshotel v. Berryhill, 313 F.Supp.3d 432, 435 (W.D.N.Y. 2018) (ALJ's ability to make common sense judgments does not extend to assessment of mental limitations).
Defendant argues that "a mental medical source opinion was not required to assess Plaintiff's RFC because the ALJ assessed his RFC based on the record as a whole." (Dkt. 12-1 at 26). In support of this contention, Defendant highlights the ALJ's observations that Plaintiff did not seek formal mental health treatment until 2015, as well as that Plaintiff was inconsistent taking medication and did not follow through on treatment. (Id. at 26-27). Defendant also contends that Plaintiff did not originally allege disability based on mental impairment and therefore "[did] not appear to have viewed his own mental impairments as disabling."[2] (Id. at 27). Plaintiff's arguments miss the mark, as they are "undermined by the ALJ's step two finding" that Plaintiff's mental health impairments were "severe." Lilley, 307 F.Supp.3d at 161 (citing Jones v. Colvin, No. 14-CV-556S, 2015 WL 5126151 at *4, 2015 U.S. Dist. LEXIS 116298 at *10 (W.D.N.Y. Sept. 1, 2015) ("because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete.") ). In other words, because the ALJ found that Plaintiff's mental health impairments were severe, the ALJ's evaluation of Plaintiff's credibility about the extent of his impairments is irrelevant; the ALJ was required to obtain opinion evidence relating to Plaintiff's severe mental impairments to specific functional capacities.
Defendant also argues that Plaintiff's mental status examinations are consistent with the ability to perform unskilled work, that he performed work at a pizza shop (which he quit based on his physical impairments, but required mental skills beyond those required by the RFC), and that he performed childcare for his children (semi-skilled work). (Dkt. 12-1 at 26-27). The Court rejects these arguments for several reasons. First, defense counsel, like the ALJ, is not a medical professional and may not interpret Plaintiff's mental status examinations to assess a functional capacity of unskilled work. Second, Defendant's articulations regarding Plaintiff's performance of the pizza shop job and, more specifically, the assumption that he could handle the mental aspects of that job, are absent from the ALJ's opinion. Defendant's after-the-fact explanation as to why the ALJ properly assessed the mental RFC cannot serve as a substitute for the ALJ's findings. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's post hoc rationalizations for agency action);
*394 Michels v. Berryhill, No. 1:15-CV-00688 (MAT), 2018 WL 1081013 at *3, 2018 U.S. Dist. LEXIS 32627 at *7 (W.D.N.Y. Feb. 28, 2018) ("[i]t is not the role of this Court to weigh the evidence of record and determine in the first instance whether or not Plaintiff's learning disorder constituted a severe impairment-that task falls to the ALJ, who failed to fulfill his obligation in this case."). In any event, the fact that Plaintiff testified that he quit his job at a pizza shop based on his physical impairments and cares for his children does not relieve the ALJ of her duty to obtain opinion evidence relating to Plaintiff's mental impairments, which includes not only Plaintiff's ability to perform skilled work, but also his capacity for interacting with the public, supervisors, and co-workers.
In sum, the ALJ erroneously assessed Plaintiff's mental limitations in the absence of a competent medical opinion. The ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and render an opinion as to his functional limitations. See Falcon v. Apfel, 88 F.Supp.2d 87, 91 (W.D.N.Y. 2000) ("It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.") (quotation omitted). On remand, the ALJ should further develop the record to obtain a medical opinion as to Plaintiff's mental limitations.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395 at *10, 2016 U.S. Dist. LEXIS 165592 at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted, 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Although Plaintiff's disability applications do not list mental impairments affecting his ability to work, as discussed above, Plaintiff clearly identified his mental conditions as affecting his ability to work at his administrative hearing. Plaintiff's failure to list his mental impairments on his disability application does not relieve the ALJ of her duty to obtain opinion evidence relating to these limitations. See Guzman v. Berryhill, No. 15 CV 3920 (VB)(LMS), 2018 WL 3387319 at *21, 2018 U.S. Dist. LEXIS 99464 at *62 (S.D.N.Y. June 12, 2018) ("An ALJ must investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist even where a Plaintiff did not list that impairment on his or her disability application.") (internal quotations and citation omitted), adopted, 2018 WL 3384444, 2018 U.S. Dist. LEXIS 115404 (S.D.N.Y. July 10, 2018).